## Pittston City School District's Directors.

*School law—Removal of school directors—Act of May 18, 1911.*

1. The remedy provided by section 217 of the Act of May 18, 1911, P. L. 309, for the removal of school directors is highly penal in character and must be strictly construed.

2. It should be construed to cover only the non-performance of things prescribed, and not the performance of things proscribed, leaving the latter to *quo warranto*.

3. School directors will not be removed because they did not enter into formal contracts with teachers where it appears that the practice had been abandoned before the petition for removal was filed, and that no harm resulted to any one from such neglect.

4. A school director will not be removed because he was an agent of a bookseller who had sold text-books to the district, if it appears that the books had been bought through another agent of the bookseller, that the director never received commissions on such sales, and that his vote was never essential in voting on the purchases.

Petition to remove school directors. C. P. Luzerne Co., May T., 1924, No. 284.

*George F. O'Brien* and *Charles B. Lenahan*, for petitioners.

*Evan C. Jones* and *Michael F. McDonald*, for respondents.

FULLER, P. J., Dec. 3, 1924.—This petition was filed March 17, 1924, against the majority four of the seven directors comprising the school board of the third class, Pittston City School District.

One of the minority three is the leading petitioner, and the only individual who has actively participated or been earnestly concerned in the effort to remove the four.

The proceeding is based upon section 217 of the School Code of May 18, 1911, P. L. 309, viz.: "If the board of school directors in any district in this Commonwealth shall fail to organize as hereinafter provided, or refuse or neglect to perform any duty imposed upon it by the provisions of this act, any ten resident taxpayers in said district may present their petition in writing, setting forth the facts of such refusal or neglect of duty on the part of such school directors, and if the court shall be of opinion that any duty imposed on said board of school directors, which is by the provisions of this act made mandatory upon them to perform, has not been done or has been neglected by them, the said court shall have the power to remove said board."

The remedy is highly penal in its nature, entailing not only the stigma of removal, but also disqualification for five years from holding the office of school director.

Therefore, it should be strictly construed, and by the general trend of judicial construction has been construed, to cover only the non-performance of things prescribed, and not the performance of things proscribed, leaving the latter to *quo warranto*.

We do not know why this distinction should have been intended, and, perhaps, it was not intended, but, if so, it is by no means the only instance where the ambiguity of the Code beclouds its intention.

The petition sets forth in general terms that the four respondents "acted unlawfully and have been guilty of malfeasance in office, misappropriation of moneys and gross neglect of duty while acting in their official capacity as directors," followed by the specifications:

(1) That the respondents, after a vote of the people authorizing an increase of indebtedness, $180,000, for a new school building in the 10th Ward to replace the Garfield School Building, a new school building in the 4th or

5th Ward for minor grades, and the improvement of the Jefferson School Building, in the 2nd Ward, and after appropriation by the board of the $180,000, viz., to the Garfield building $120,000, to the 4th or 5th Ward building $50,000, and to the Jefferson building $10,000,-neglected and refused to provide for the second and third purposes, and expended, or have obligated themselves to expend, more than the entire amount on the said Garfield building.

(2) That Langan, one of the respondents, while a director, was directly and financially interested in the sale of text-books to the district as agent for D. C. Heath & Co.

Later, on call for bill of particulars, the petitioners, without further recital of fact, specified the following sections of the School Code as having been violated by the respondents, viz.:

Section 224, reciting the school director's oath of office, *inter alia*, "That he will discharge the duties of his office with fidelity."

Section 401, *inter alia*, "The board of school directors shall establish, equip, furnish and maintain a sufficient number of elementary public schools in compliance with the provisions of this act to educate every person residing in such district between the ages of 6 and 21 years who may attend."

Section 511, *inter alia*, "No school order shall be authorized by the board or signed by the president or secretary unless there are sufficient funds in the treasury of the district to pay the same."

Section 513. "The amount of funds in any one estimate, at or before the time of levying the school taxes, which is set apart or appropriated to any particular item of expenditure, shall not be used for any other purpose or transferred, except by resolution of the board of school directors, receiving the affirmative vote of two-thirds of the members thereof."

Section 563. "Requiring the preparation of an annual budget with apportionment to the several classes of expenditure, prohibiting use for other than the apportioned purposes until after affirmative action at a legal meeting."

Section 601. "Requiring the board to provide the necessary grounds and suitable school buildings to accommodate all the children between the ages of 6 and 21 years, with proper equipment for heating, ventilating and sanitary conditions."

Section 617. "Requiring all work upon school buildings exceeding $300 to be done under contract with the lowest responsible bidder, after due public call for competitive bids."

Section 621. Prescribing the character of heating and ventilation.

Section 709. "No person shall act as agent for school books or school supplies in any district in which he is engaged or employed as superintendent, teacher or employee of the school district in any capacity."

Section 711. "Making it a misdemeanor for any school director to accept bribes for his influence on the purchase of school books and other school matters."

Later, the petitioners supplemented their bill of particulars by amendment of the original petition, averring that the failure of respondents to use the sum of $50,000 for a new school building in the 4th or 5th Ward has resulted in failure to provide the necessary grounds and suitable school buildings to accommodate all the children between the ages of 6 and 21 years, in violation of sections 401 and 601, *supra*.

Also, that their failure to use the sum of $10,000, or any part thereof, for the improvement of the Jefferson School Building has resulted in leaving that building without proper ventilation and heat, in violation of section 620, viz.: "No school-room or recitation-room shall be used in any public school which

is not provided with ample means of ventilation, . . . with device to protect pupils from currents of cold air," etc., and without necessary safety appliances, in violation of section 625, viz.: "Every school building shall be provided with necessary fire-escapes and safety appliances as required by law."

Also, that on the Garfield building the sum of $636 was paid on Aug. 27, 1923, and the sum of $1066 was paid on Nov. 26, 1923, to a contractor without a contract based on competitive bidding.

Still later, when the hearing had gotten well under way, the petitioners asked, and we have granted, leave to amend further, by adding that "The respondents, for two years prior to December, 1923, violated section 1205 of the School Code, in that all contracts with teachers were not in writing in duplicate and executed on behalf of the board of school directors, by the president and secretary and signed by the teachers."

A demurrer to the petition was overruled and answer was then filed raising issues of fact and law.

Much testimony, more or less relevant, has been taken, and the case now comes to us with all its embarrassing features for decision.

The long list of complaints, loosely straggling through the record, was summarily simmered down upon final submission to just three, stated by the petitioners to be:

1. Disposition of the $180,000, or bond issue, involving breach (1) of oath to observe Constitution, section 224; (2) of duty to maintain sufficient proper accommodations, sections 401, 601, 620 and 625; (3) of requirement on change of appropriation, section 513.

2. Failure to enter into contracts with the teachers, in breach of section 1205.

3. Langan's agency for sale of text-books, in breach of section 709.

1. The facts and considerations pertinent to disposition of the $180,00 are these:

In September, 1922, the board submitted to popular vote the question of increasing the district's indebtedness beyond the constitutional limit in the sum of $180,000, for the purposes (1) of new school building in 10th Ward to replace Garfield building; (2) of new school building in 4th or 5th Ward for minor grades; and (3) of improvement of Jefferson building in 2nd Ward.

In the public notice no separate amount was specified for any of the three projects.

The vote was affirmative, and in March, 1923, the board adopted a resolution authorizing loan on bond issue, and appropriating the money thus:

For replacement of Garfield building.................$120,000
For new building in 4th or 5th Ward................ 50,000
For improvement of Jefferson building.............. 10,000

Bids were then duly called and received for the Garfield building, the lowest and best bids aggregating $125,364.

Upon faith of oral and written advice from the district's solicitor that the amount of $120,000 appropriated to that building could lawfully be exceeded, the bids were accepted, contracts were made and the work entered upon.

Then it was found that unforeseen mining conditions made necessary a large additional expenditure for proper security of the foundation.

The work on that building, although temporarily stayed by judicial proceedings, has now gone on to completion, at a total cost of $158,672.25.

Connected therewith are miscellaneous items of indebtedness to the architects, to the solicitor, to the bonding company and for furniture, aggregating $17,133.33, making grand total chargeable to that building $175,805.58.

Pittston City School District's Directors.

There has been further expended in the improvement of the Jefferson building $8103 since this proceeding was begun, thus running the outlay to $183,-908.58.

The proposal for new building in 4th or 5th Ward has been abandoned without selection of site or erection of building, mainly owing to exhaustion of the resources and partly owing, perhaps, to the difficulty of obtaining a suitable, safe site.

The fund realized on the sale of bonds, including principal, premium and interest, amounted to $185,773.63, and has been practically all consumed on the Garfield and Jefferson buildings.

The long and short of the matters is that the school board, in planning vital improvements, made a bad guess on pecuniary requirements.

Pending the Garfield and Jefferson work, now complete, the board has been put to unsatisfactory and inadequate temporary makeshifts for the accommodation of pupils, but they have done the best they could do under the circumstances.

They have had a hard row to hoe, and while we feel constrained to say that they have not hoed the row very well, we cannot say that they have hoed it badly enough to be pulled out for another set of hoers who might hoe no better.

Inasmuch as the public notice for increase of indebtedness did not specify a separate amount for any one of the three projects, but only a lump sum for all, we think it was proper, and we have so decided in the case of Alaimo Bros. v. Pittston City School District, in No. 582, October 'Term, 1924, to use the entire amount under the circumstances upon two of the projects.

The initial appropriation, however, by the board in March, 1923, should have been changed in the formal manner prescribed by section 513, that is, by resolution of the board, receiving the affirmative vote of two-thirds of the members, and there is no proof in the board minutes of such action.

But it would have been suicidal not to change, and in view of the factional division in the board, four to three, perhaps impossible to make the change by a two-thirds vote.

2. On the point of failure to enter into contracts with the teachers, it seems that the board, for some reason best known to themselves, which, however, we surmise to have been a labor-saving intention, for several years prior to the present, failed to follow the prescription of section 1205 in having all teacher contracts executed and signed in duplicate.

Instead, they merely sent to the teachers written individual notice of employment, viz.: "You have been elected a teacher in the Pittston City schools for the term beginning .............., provided you have the necessary certification. Your salary will be paid in ten monthly instalments. Your acceptance or rejection should be in the hands of the secretary ten days from date."

This bad practice, however, had been abandoned some months before this proceeding was instituted, was only brought into the case by amendment after the hearing was well advanced on the other contentions, and was not productive of harm to anybody.

3. On the proposition of Langan's agency for text-books, urged against him alone, we find, on his uncontradicted evidence, the pertinent facts to be as follows:

He had been a member of the board for more than twenty years, and was its secretary from January, 1920, to July, 1921, on a salary of $900.

### Pittston City School District's Directors.

During all that time he was the agent of the school text-book concern, Heath & Co., of New York, for the sale of text-books to the school districts in northeastern Pennsylvania, being paid a stated salary for his services.

The concern during that period made large sales and received large payments of money from this district.

For some years at least, in this district, however, the sales have not been made through Langan, but through another agent.

Langan, as a director, voted for the payments but received no profit or commissions.

It does not appear in any instance that his vote was needed, either to make the purchase or the payment.

This was not a technical violation of section 709, which is the basis of this complaint, viz.: "No person shall act as agent for school books or school supplies in any district in which he is engaged or employed as superintendent, teacher or employee of the school district in any capacity."

The prohibition does not extend to directors.

Langan was not a superintendent or teacher.

During the period of salaried secretaryship he might be termed an employee, but he did not act as agent in this district.

On account of his business relations with Heath & Co. and his connected self-interest, he should not have voted on any proposition to buy or pay for their text-books, and if his vote was needed for that purpose, it would have been a reprehensible irregularity to cast it.

But we find no breach of law, and if we could, it would involve only the performance of a thing proscribed and not the non-performance of a thing prescribed, which, on the construction heretofore announced, limits our power in this proceeding.

We have come to the conclusion that these four directors should not be removed on any of the allegations urged against them.

Under their administration the district has come into a very difficult and disagreeable situation, and we leave them in office to help the district out of its embarrassment.

In that effort all the directors should concur by putting their heads together in friendly, intelligent conference, instead of splitting into irreconcilable belligerent factions.

We commend the leading petitioner for his strenuous spotting and swatting of irregularities.

It is a good thing to remind school boards occasionally of the School Code, which is supposed to govern the exercise of their official functions.

It will tend to promote more punctilious observance.

But in proceedings of this character courts should not treat too harshly errors of judgment unaccompanied by corruption or irregularities which have inflicted no harm.

Judge Edwards, the eminent Lackawanna County jurist, has lately expressed similar views in refusing to remove, on closely similar charges, the School Board of Mayfield Borough, No. 460, March Term, 1924, C. P. Lackawanna County.

The petition is dismissed.

From F. P. Slattery, Wilkes-Barre, Pa.